## Edmunds's Appeal. Hance's Estate.

1. Hance seised of real estate devised it to Edmunds in trust to pay the rents, &c., to his wife for life and on her death to convey it to Garretson (a married woman) and Laming in fee. On the death of his wife the trust ceased.

2. The property was subject to a mortgage. During the life of the widow Laming conveyed his interest to Westcott. The mortgagee sued out the mortgage. Westcott purchased the mortgage; the property was sold under it and purchased by himself. *Held*, that the purchase of the mortgage and land was for the benefit of Mrs. Garretson, his co-tenant as well as of himself.

3. The will authorized Edmunds to mortgage the property during the wife's life " for the sole purpose of paying off the mortgage now held against me." *Held*, it was the duty of Westcott to notify Edmunds to make a loan under the will to take up the mortgage : notice to the cestui que trust was not sufficient.

4. Mrs. Garretson being a married woman was not in a condition to be forced into an election.

5. The property was sold February 1866, the widow died November 1867, Mrs. Garretson tendered her share of the purchase-money and demanded a conveyance from Westcott in February 1868. *Held*, that this was not unreasonable delay.

6. After the death of the widow, a bill was filed in the name of the trustee as such against Westcott for a conveyance of the moiety and an account. *Held*, that the trustee was not then a proper party, but the bill being for the use of Mrs. Garretson was amendable by striking out the trustee's name in the Supreme Court.

February 23d 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the Supreme Court at Nisi Prius : In Equity : No. 66, to January Term 1868.

The bill in this case was filed March 6th 1868, by Luther C. Edmunds, trustee for Eliza Hance Garretson, against Ebenezer Westcott, it set out :—

1 and 2. That John Hance by his will dated March 3d 1853, and proved on the 25th of the same month, devised the residue of his estate, real and personal, to the plaintiff in fee, " in trust to pay the rents and proceeds thereof from time to time as they shall be received, unto my wife Catharine for * * * life, and upon the decease of my said wife, then to grant, convey and assure the whole of the said estate, real and personal, unto William Staughton Laming and Eliza Hance Garretson (children of William and Catharine Laming), their heirs, executors, &c.. for ever,

provided, &c., that it shall be lawful for the said Luther C. Edmunds, * * * at any time during the life of my said wife to grant and convey in mortgage, all or any part of my real estate to such person or persons with whom he may effect a loan for the sole and express purpose of paying off the mortgage now held against me when the moneys thereby secured shall be demanded, and for no other purpose whatever;" that the plaintiff was appointed executor of said will, and letters testamentary were granted to him.

3. That Catharine, the widow of the testator, died November 22d 1867, having received the rents and income of the estate until within a short time of her death.

4, 5 and 6. That the testator died seised of a lot on 6th street, Philadelphia, on which were several buildings, subject to a mortgage given by him to James Murphy for $1200, and assigned after the testator's death to John Gill, and also to another mortgage for $900.

7. That during the life of the widow the interest had been paid on the mortgages, and had the plaintiff known that payment of the principal was desired, he and his cestui que trust could have raised the money to pay them.

8. That under returns of "nihil" to two writs of scire facias on the first mortgage, judgment was entered in favor of John Gill on the 21st of October 1865, for want of an affidavit of defence, of which judgment the plaintiff had no notice until within a few months and which judgment he charged was illegal.

9. That in 1862 the defendant purchased from William S. Laming his interest, being the undivided half of said lot, &c., the plaintiff as holder of the legal title never having joined in the deed, and that by such purchase the defendant became tenant in common with Eliza H. Garretson of the equitable title, subject to the life estate of the testator's widow.

10. That after issuing the alias scire facias, the defendant procured his son, Francis H. Westcott, to purchase the first mortgage and the suit was marked on the record to his use; that the purchase was for the use of the defendant, he having furnished the money.

11, 12 and 13. That J. M. Pile, Esq., entered an appearance in the scire facias for the defendant as terre-tenant, and afterwards entered an appearance for F. H. Westcott, and three days afterwards took judgment for want of an affidavit of defence, which the plaintiff charged was illegal, because the defendant had not been served with process nor placed on the record as defendant and was not sole tenant; and that the property was sold by the sheriff under the above judgment and conveyed by him to the defendant for $2400; that the proceeds of sale were appropriated to the payment of the two mortgages and costs, amount-

ing in all to $2372.40, and the plaintiff's attorney receipted to the sheriff for $2400.

14. That the proceedings were had without notice to the plaintiff or to Eliza H. Garretson, who was a married woman, the wife of Nelson Garretson; that all the proceedings were a trick and fraud by the defendant to deprive his co-tenant, Mrs. Garretson, of her interest in the property, which was worth $18,000.

15 and 16. That before filing the bill, Mrs. Garretson tendered to the defendant one-half the sum paid by him to the sheriff for the property, and demanded a conveyance of the one undivided half ·of the property; that the defendant refused to accept the money or make the conveyance; that he has since the sheriff's sale received the rents and profits, and refused to account to Mrs. Garretson or pay any part of the same.

17. That under the circumstances the purchase at the sheriff's sale would, as to the one undivided half, enure to the benefit of Mrs. Garretson upon her payment of one-half the encumbrances.

18 and 19. That the plaintiff and Mrs. Garretson, who resided near Cape May, New Jersey, had been ignorant of the proceedings until shortly before filing the bill and a long time after the sheriff's sale, and that Mrs. Garretson had no control of the property until after the death of the testator's widow.

The prayers were :—

1. The revocation of the judgment on the mortgage.

2. An account to the plaintiff for the use of Mrs. Garretson for one-half the rents and profits.

3. The conveyance for the use of Mrs. Garretson of the undivided half of the property upon the payment to the defendant of one-half the moneys expended by him, and for further relief.

In his answer, the defendant, admitting many of the averments of the bill, alleged,

7. That the defendant and Mrs. Garretson had been notified that the holders of the mortgages desiring to foreclose them, had brought suit; were about to sell and had sold the premises, and that the plaintiff and Mrs. Garretson refused to assist in the payment of the mortgages or defending the suits, and told the defendant that he must take care of his own interests; that he offered to take the mortgages, if plaintiff and Mrs. Garretson would provide for the early payment of the one-half, which they refused.

10. That the purchase of the mortgage was by defendant's son, F. H. Westcott, with money in his possession, part of which belonged to the defendant, the purchase was made at the request of the testator's widow and also at the defendant's to protect his interest.

11. That in September 1865, Mrs. Garretson informed the defendant that she had been notified that the holders of the mortgages intended to collect them; from his counsel Mr. Pile, defend-

ant learned that the writs of scire facias had been issued and that the matter required immediate attention, and Mr. Pile entered an appearance for defendant as terre-tenant.    Afterwards, at the request of the testator's widow, his son, F. H. Westcott, purchased the mortgage under her promise that she could obtain the funds in a few days to take up the mortgage and extend the time of payment, the mortgage was assigned to him as above stated and judgment entered for want of an affidavit of defence, which was legal the defendant knowing of no defence to the mortgage. After the purchase of the first mortgage, defendant's son was notified by the holder of the second mortgage, that if satisfaction were not entered on the first, the second would be sued out; his son then purchased the second mortgage.

12.  That the property was not sold for three months and a half after judgment and after F. H. Westcott had been informed by the parties in interest that they could not make an arrangement to pay the mortgages.

13.  That the receipt by F. H. Westcott's attorney to the sheriff was not for $2400, but only for the amount due to his client.

14 and 15.  Defendant denied that the proceedings were without notice to the plaintiff and Mrs. Garretson, or that they were with intent to defraud her by a trick out of her share of the property, or that the property was worth more than half the price alleged by the plaintiff, or that Mrs. Garretson tendered him $1200 or any other sum for a reconveyance of the premises.

16.  That defendant had not received any rents and profits during the life of the testator's widow; that since her death he has received the rents and profits but has paid out considerable sums for counsel fees, repairs, &c., and that no request had been made to him to account.

17.  Defendant denied that the defendant or Mrs. Garretson had offered to pay half of the encumbrances.

The case was referred to Samuel Robb, Esq., as examiner and master, who, after hearing much testimony reported, finding the facts as to the will of John Hance, the existence of the two mortgages, the sale of William S. Laming's interest to the defendant and the issuing of the writs of scire facias, as set out in the bill. He further found that in 1861, the trustee removed to New Jersey and committed the charge of the whole property to Mrs. Hance, the widow, who resided in one of the houses; that Mrs. Garretson and the defendant resided in New Jersey about twenty miles apart. About the time of the suits on the mortgage Mrs. Garretson was notified by letter through Mrs. Hance, either of the suit or the desire of the holder of the first mortgage for payment, and replied to the letter, and also wrote to the defendant; the contents of the letters, which had been lost, did not particularly appear.    On the 15th of September 1865, the counsel for the holder of the

[Edmunds's Appeal.]

second mortgage wrote to the husband of Mrs. Garretson, informing him of the urging of the first mortgage, and notifying him that if provision were not made for its payment, the second would be pressed. Mrs. Garretson received and opened the letter and sent it to the defendant, advising him that she had written to him a few days before, saying that she did not know that she could do anything, regretting that the property should be sold by the sheriff, as it would not bring near its worth, and saying if it could be kept they would soon be in their possession, as. Mrs. Hance would probably not need it very long. The defendant first learned by these letters that the mortgage-money was wanted.

The alias scire facias on the first mortgage was issued September 19th, and was returned "nihil" on the first Monday in October. About this time the defendant, through his son, instructed Mr. Pile to take charge of the matter, and on the 2d of October he appeared for the defendant as terre-tenant. On the 4th of October F. H. Westcott, the son, at the defendant's instance and the request of Mrs. Hance, in order to gain time for payment, purchased the first mortgage for $1235, its full value, paying for it partly in his own money and partly with money in his hands belonging to his father the defendant, and took an assignment of it with the suit which was brought upon it. Mrs. Garretson was at once notified of this by F. H. Westcott, and she and the plaintiff were requested to pay her share of the mortgage. The plaintiff at that time made no reply, but on the 5th of October Mrs. Garretson replied by letter that her husband was not at home, that he had told her that he did not know that he could do anything towards paying the debt, that he could not get money without mortgaging his farm, which he was not willing to do, as he was opposed to getting into debt, that she was glad defendant had paid part of the money, and was sorry she could do nothing towards saving the property, as it would be worth something "pretty nice" when they should get possession. On the 6th of October, the suit was marked to the use of F. H. Westcott; on the 18th Mr. Pile entered an appearance for him, and on the 21st took judgment for want of an affidavit of defence. There was no evidence that any defence could have been made to the mortgage. The holder of the second mortgage insisting that the first should be satisfied or the second paid, F. H. Westcott acting for his father, purchased this mortgage also at its full value, and took an assignment of it; this purchase was made partly with his own money and party with money of his father then in his hands. The plaintiff and Mrs. Garretson were advised what had been done, but did not raise her share of the mortgages. In several conversations, F. H. Westcott told the plaintiff that unless Mrs. Garretson's share of the mortgage were paid the property would have to be sold; he seemed to acquiesce in the necessity of the sale,

but requested that Mrs. Hance should not be dispossessed. On the 20th of January 1866 a levari was issued, and on the 5th of February the premises were sold by the sheriff to the defendant for $2400, which were distributed in payment of the mortgages, ground-rent, taxes and costs. The plaintiff and Mrs. Garretson were informed of the sale, and that the defendant was the purchaser, and on the 13th of March the plaintiff assigned to the defendant two policies of insurance on the property. Subsequently the defendant repaid his son what he had advanced in the purchase of the mortgages.

Mrs. Hance continued in possession of the premises, collecting the rents as before the sale, but paying to the defendant a rent of $144 per annum until her death, November 1867.

On the 27th of February 1868, Mr. Garretson on behalf of his wife, tendered to the defendant $1200, and demanded a deed for the undivided half of the property to her or to the plaintiff as her trustee. The defendant declined to accept the money, and refused to make the conveyance, saying that it was too late, that he was the owner of the property, that they knew of the sale, and should have made the tender before. At the time of the sale the property was worth between $6000 and $7000, and has since been assessed at $8000.

The master, in deciding the case, further reported:—

" * * * After a careful consideration of all the authorities either cited by counsel or within reach of the master, he has not been able to persuade himself that there is any rule of law or equity which forbids a mere tenant in common from purchasing an encumbrance on the common property, and thereunder selling the same and purchasing it for his exclusive benefit, provided he does it fairly, and 'not behind the back' of his co-tenant. The defendant here was a mere tenant in common; he was not in possession, nor did his interest accrue under the same instrument or act of law as that of the plaintiff or his cestui que trust, Mrs. Garretson, nor did he hold any family or other relation of confidence to them, or either of them; and the question is, did he act fairly towards them? That he did, the facts would seem to scarcely leave room to doubt. The parties interested were notified that the assignee of the mortgage wanted his money. Mrs. Garretson herself notified the defendant, and he thereupon put the matter in charge of his son, who, ascertaining that suit had been brought, purchased the mortgage at the request of the life tenant, and in order to gain time for the parties to arrange for its payment. The plaintiff and Mrs. Garretson were informed of this, and several times were requested to provide the money to take or pay for her share of the mortgage, which they declined to do. Now, admitting that the assignment of the mortgage to the son was an assignment to his father, the defendant, and that the latter

could not have taken such an assignment, and claimed whatever advantage might be derived from the sole ownership of the mortgage, against Mrs. Garretson's right as co-tenant to participate if she should choose so to do, still it is clear that she could assert her right as co-tenant only by discharging her duty as co-tenant, and contributing her share of the expense. Whether she would do this or not, was entirely optional with herself; she could not be compelled to assert her right, and was under no obligation to pay unless she wished or meant to assert it. The defendant, by advising her of the facts and requesting her to contribute or pay her share of the expense, and thus assert it, had done all that fairness could exact of him. The election was with her to pay within a reasonable time, and assert her right, or refuse to pay, and forfeit her right. She elected not to pay. Her election was final and conclusive. She could not blow hot and cold, play fast and loose, claim a co-tenancy as to its privileges and benefits, and disclaim it as to its duties and burdens. It seems to the master that after this election and refusal, she could not require that the defendant should deal with her in respect of the common property otherwise than as a stranger. But suppose she could—suppose she could still insist upon all her rights as a tenant in common. It has been found as a fact that both she and the plaintiff were informed of the sheriff's sale, and knew that the defendant had become the purchaser of the property. If then she could insist upon the benefits of the co-tenancy, and claim an equal share of the property upon paying an equal share of the expense, it has been seen that under the authorities, she was bound to elect and pay within a reasonable time. This she did not do; she waited for more than two years, and until after the death of Mrs. Hance, the life tenant, and who occupied and was in possession of the premises during her life, and then for the first time offered to pay, and asserted her right as a co-tenant. As it was not shown that she could not have paid before—that she could not have obtained the money within a reasonable time of the sale, from the same source from which it was obtained to make the tender—it does not seem unreasonable to infer that she waited until, by the death of the widow, there should be at least a hope for a profitable return for the outlay, and that the benefits would exceed the burdens of the co-tenancy. Equity will not permit a party thus to speculate. Satisfied that the defendant acted fairly with the plaintiff and Mrs. Garretson, that his dealings about the property were before their faces and not "behind their backs," that they were afforded an opportunity to come in and pay and assert their right, of which they declined or omitted to avail themselves, when in equity they should have done so if they intended to do so at all, the master is of opinion that the bill in this case should be dismissed at the costs of the plaintiff.

The plaintiff filed exceptions to the report, which were over-ruled at Nisi Prius, by SHARSWOOD, J., the report confirmed, and the bill dismissed at the costs of the plaintiff.

The plaintiff appealed to the court in banc and assigned the dismissal of his bill for error.

*A. Thompson* and *A. B. Parsons*, for appellant.—The purchase by one tenant in common of an encumbrance on the common property enures to the use of both: Van Horne *v.* Fonda, 5 Johns. Ch. R. 388; Smiley *v.* Dixon, 1 Penna. R. 439; Brown's Estate, 2 Barr 463; Weaver *v.* Wible, 1 Casey 270. Mrs. Garretson being a married woman could make no binding election. The trustee held the legal title, and he had no notice of the foreclosure. The tender was made within two months after the death of the tenant for life. If the trustee had received notice, he might have raised money under the authority in the will and saved the property. Time must be of the essence of the contract. Bellas *v.* Hays, 5 S. & R. 443.

*J. M. Pile* and *G. W. Thorn*, for appellant.

The opinion of the court was delivered, May 8th 1871, by

AGNEW, J.—The proposition upon which the master rested this case may be true; that there is no rule in law or equity which forbids a mere tenant in common from purchasing an encumbrance on the common property, and thereunder selling the same and purchasing it for his exclusive benefit; provided he does it fairly and not behind the back of his co-tenant. But the cases discussed by the master and those cited in the argument show, that the proposition as thus stated occupies a very narrow field, when we come to ask the question, what is fair to a co-tenant, and what may be done openly and not behind his back. It is in this respect the master erred in his application of his own proposition to the facts of the case. The fact is conceded that Francis H. Westcott, a son of the defendant, bought the mortgages against the estate of John Hance, the testator, at the instance of his father, and of Mrs. Hance the life-tenant, and used his father's funds chiefly in so doing, and so far as he used his own they were refunded to him by his father. It is asserted, that the purpose at the time was to prevent the enforcement of the mortgages against the property by the creditors, and not to force a sale. To this purpose there can be no objection. But it is to be noticed that at this time the trust still continued in Luther C. Edmunds, the trustee; that the estate of Mrs. Garretson, the plaintiff, had not vested in possession, and did not until a year and a half after the subsequent sale. John Hance had made provision in his will for the payment of these mortgages, by a mortgage of all or any

part of the property by the trustee. Hence the question of value, which the master thought quite immaterial, was highly important. Instead of giving notice to Mrs. Garretson, whose estate was not yet in possession, to raise the money and pay off one-half of the mortgage-debt, it was Westcott's duty to notify the trustee to make a loan under the power in the will. The mortgage was then but $2100 in amount, while the property was worth over $6000. Had the power been exercised the defendant would have had his money if he wanted it, and something would have been saved for Mrs. Garretson. A long loan on mortgage would have enabled her, after the estate came into possession, to pay off her share of the encumbrance. But while the younger Westcott called on the trustee, as he says, to raise the money, there is no evidence that the elder Westcott, the real owner of the mortgages, and co-tenant with Mrs. Garretson, ever notified the trustee to mortgage the premises or any part, but he permits the sale to take place within six months after he had become the owner of the encumbrances. Edmunds was not bound to pay the money himself, and Mrs. Garretson was a married woman, without an estate in possession to secure a loan. But the defendant chose rather to hold the mortgages in his son's name from October and November to January, a brief period, which he terms reasonable, and then to sell the property to himself for the small sum of $2400. Now clearly this was not a fair exercise of his power over the estate by means of the purchased encumbrances. Another fact to which the master gave no weight, is that Mrs. Garretson was a married woman without means to pay the money when notified to do so. Her husband was not bound to raise the money or mortgage his farm for it, and therefore the greater reason why the trustee should have been duly and formally called on to exercise the power under the will. As a married woman, under disability and without means, she was entitled to consideration, instead of a sale enforced against her future estate, or a sacrifice of an interest yet distant in the time of enjoyment. A life-tenant being in possession, entitled to the rents, it would have been difficult for Mrs. Garretson to raise the money on her expectancy.

Besides, the price at which the defendant bought the property is some evidence of unfairness. It shows, that by means of the possession of the encumbrances he became the owner of property worth $6000, for the sum of $2400. These views show that the master's position is unsound when he held that Mrs. Garretson's right as a co-tenant could be asserted only by discharging her duty as co-tenant and contributing her share of the expense, and that therefore she had made an election not to pay, which concluded her. The duty to pay was not then hers, but that of the trustee under the power, and she was not in a position then to be forced into an election, at least by the means taken by the defend-

ant.    It would have to appear very plainly that the trustee totally refused to do his duty, and even then he might have been compelled by proceedings in the court.    A mere call on Mrs. Garretson for the money was less than the defendant's duty, at least, before he could sell the property and buy it in at the time he did. Mrs. Hance did not die till November 1867, and the tender by Mrs. Garretson was in February 1868.    There was therefore no such unreasonable delay as would prevent her from calling for a conveyance by deed and an account of the profits of the property set forth in the bill.

In the ejectment between these parties, on writ of error argued with this appeal, we have said that the trust in Luther C. Edmunds ceased at the death of Mrs. Hance, and therefore he is not a proper party; but as the bill is for the use of Mrs. Garretson, the error is amendable, and we shall treat it as amended and decree accordingly.

And now, May 8th 1871, it is decreed that the order and decree of the Court of Nisi Prius dismissing the bill in this case be reversed, and it is now ordered and decreed that Ebenezer Westcott, the defendant, do by a good and sufficient deed in fee simple, convey to Mrs. Eliza H. Garretson, her heirs and assigns, all his estate, right, title and interest, of, in and to the one undivided half of the premises set forth in the bill in this case, on the said Eliza H. Garretson paying to him one-half of the principal sums in the two mortgages in the name of James Murphy against John Hance, set forth in the bill and answer, together with lawful interest accrued upon the same since the month of November 1867, allowing to the said Eliza H. Garretson, a credit for one-half of the net rents, issues and profits of the said property; for which purpose an account of the rents, issues and profits is directed to be taken before the master heretofore appointed in this case, the master to ascertain and report also the sum to be paid by Mrs. Garretson to the said Ebenezer Westcott on the delivery of the deed, now ordered to be made by him to her.    And the court further order and direct the costs of this case to be paid by the defendant, E. Westcott.